Filed 1/16/14  P. .v Chan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PANHA RITH CHAN,<br><br>    Defendant and Appellant. | G048071<br><br>(Super. Ct. No. 12WF2430)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion, filed December 30, 2013, is hereby modified in the following particulars:

1.  On page 8, before the paragraph that begins "Although, as the trial court observed," add the following paragraph:

"Even assuming Dalton's conduct in patting down Chan amounted to deliberate police misconduct, *Herring* would not compel exclusion of the cocaine that was found in Chan's trunk.  *Herring* speaks to the remedy available when an unlawful police action leads to the discovery of incriminating evidence.  (See also *Brown v. Illinois*

(1975) 422 U.S. 590 [assessing admissibility of incriminating statements that would not have been obtained but for the defendant's illegal arrest].)  However, in our case, the unlawful police action (Chan's patdown) did not yield any evidence or have any effect on its discovery.  In fact, nothing incriminating was seen or seized during the stop until after the officers opened Chan's trunk.  And by that time, the drug-sniffing dog had already alerted on Chan's car, giving the officers probable cause to search the vehicle.  (*Illinois v. Caballes, supra,* 543 U.S. 405.)"

This modification does not affect the judgment.

The petition for rehearing is DENIED.

BEDSWORTH, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

THOMPSON, J.

2

Filed 12/30/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PANHA RITH CHAN,<br><br>    Defendant and Appellant. | G048071<br><br>(Super. Ct. No. 12WF2430)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge. Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Panha Chan was convicted of transporting cocaine that was found in the trunk of his car during a traffic stop. He contends the cocaine was unlawfully seized because the stop was unduly prolonged, but we disagree and affirm the judgment.

FACTS

On the night of September 8, 2012, Garden Grove Police Officer Brian Dalton noticed a car with illegally tinted windows heading north on Brookhurst Street. After following the car for a few moments, he activated his overhead lights, and the car pulled over to the side of the road. Dalton then pulled up behind the vehicle in his squad car. According to recording equipment in his car, the stop occurred at 6:53 p.m.[1]

While his partner approached the passenger side of the car, Dalton contacted its lone occupant, Chan. Dalton told Chan why he stopped him and asked for his driver's license, registration and proof of insurance. Chan seemed nervous. Rather than making eye contact with Dalton, he looked straight ahead, swallowing and stuttering at times. However, he provided all of the items Dalton requested.

Dalton took Chan's paperwork back to his car to "check his license status" and "run him for wants and warrants." Not finding any wants or warrants, he then walked back to Chan's car and contacted him again. At this time, Dalton did not have Chan's paperwork with him, nor did he write him a ticket. Instead, he twice asked Chan if there was anything illegal in his car. Both times Chan said no. He also asked Chan if he could search his car, and Chan said he would like to have his lawyer present.

At that point, Dalton had Chan step out of his car and patted him down for weapons. Not finding any, he sat Chan down on the curb. This was about five minutes into the stop.

---

[1] A video camera in Dalton's squad car was directed toward Chan's car throughout the entire course of the stop. Like the trial court below, we have reviewed the footage it captured to get a better understanding of the facts.

4

By that time, a K-9 patrol officer had arrived at the scene with a drug-sniffing dog. After speaking with Dalton briefly, the officer walked the dog around Chan's car. When they got to the trunk, the dog alerted for the presence of narcotics. The officers then began searching Chan's car. They didn't find anything in the passenger compartment, but upon opening the trunk, they discovered a nylon bag that contained two packages of cocaine.

Chan was charged with transporting and possessing cocaine for sale. In moving to suppress the cocaine, he argued Dalton lacked reasonable suspicion to pat him down, and because of the illegal patdown, the stop was unduly prolonged, rendering the subsequent search of his trunk unlawful. The trial court agreed the patdown was unjustified, for lack of evidence Chan was armed. It also questioned Dalton's motivation for the stop, saying "[I]t's pretty clear the officer had some suspicion about [Chan] and his activities prior to or at the time of the stop considering how quickly the K-9 unit arrived[.]" However, given that only about seven minutes elapsed from the time Chan was pulled over until the dog alerted on his trunk, the court determined the stop was not unreasonably prolonged. It therefore denied Chan's motion. Chan then pled guilty and was sentenced to six years in prison.

DISCUSSION

Chan contends the trial court erred in denying his motion to suppress, but as we now explain, the court's decision was correct.

First, there is no dispute Dalton had the right to pull Chan over for having illegally tinted windows. Although the trial court surmised Dalton suspected Chan of criminal behavior unrelated to that violation, and Chan asserts the stop was merely a pretext for Dalton to conduct a "fishing expedition" for incriminating evidence, police conduct is judged by an objective standard of reasonableness. (*Whren v. United States* (1996) 517 U.S. 806.) Because Dalton had an objectively reasonable basis to believe a traffic violation had occurred, the stop was lawful under the Fourth Amendment,

5

regardless of his motivation for pulling Chan over. (*Id*. at p. 813 ["Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."].)

In addition, as Chan concedes, Dalton was justified in obtaining his driver's license, registration and proof of insurance. Indeed, examining a driver's paperwork, explaining the basis for the stop, and listening to any explanation the driver may offer are all things an officer is expected to do during a traffic stop. (*People v. McGaughran* (1979) 25 Cal.3d 577, 584 (*McGaughran*).) These actions are considered lawful because they are part and parcel of an officer's statutory duties in conducting a traffic stop, which are to issue the driver a citation and release him when he signs a promise to return. (*Ibid*.) Of course, in lieu of writing a ticket, the officer also has the discretion to send the driver on his way with a warning. (*Ibid*.) However, in either case, an officer may detain the driver only "for the period of time necessary to discharge the duties that he incurs by virtue of the traffic stop." (*Ibid*.; accord *Illinois v. Caballes* (2005) 543 U.S. 405, 407 [a traffic stop "that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."].)

Conducting a warrant check, patting down the driver and bringing in a drug-sniffing dog are not among the duties that an officer naturally incurs by virtue of an ordinary traffic stop. (See *McGaughran, supra,* 25 Cal.3d at p. 584.) However, if these actions can be performed within the time it would have taken the officer to issue the driver a ticket, there is no basis to suppress any evidence they yield. The key element is timing. In fact, it's not so much what the officer did during the course of a traffic stop as whether what he did "prolong[ed] the stop beyond the time it would otherwise [have] take[n]." (*People v. Bell* (1996) 43 Cal.App.4th 754, 767.)

Therefore, "If a warrant check can be completed within [the time it would have taken to issue the driver a ticket] no reason appears to hold it improper: because it would not add to the delay already lawfully experienced by the offender as a result of his

6

violation, it would not represent any further intrusion on his rights." (*McGaughran, supra,* 25 Cal.3d at p. 584.)  The same rule applies to dog sniffs and patdowns.  (*Illinois v. Caballes, supra,* 543 U.S. at p. 407; *United States v. Johnson* (7th Cir. 2009) 331 Fed.Appx. 408; see also *People v. Bell, supra*, 43 Cal.App.4th at p. 767 [officer's actions in asking driver questions unrelated to his traffic violation and seeking his consent to search did not render traffic stop unlawful because they "did not add to the delay otherwise resulting from the . . . stop."].)

In this case, it took Dalton only a couple of minutes to run a computer check on Chan.  Thus, Chan does not complain about that aspect of the stop.  However, he argues that once the check was complete, Dalton should have issued him a ticket and sent him on his way, instead of patting him down and bringing in the drug-sniffing dog.  Chan contends these actions unduly prolonged the stop because they were "unnecessary to discharge Dalton's duties to conduct the traffic stop[.]"

The flaw in this argument is that it fails to take into account the actual facts of this particular incident.  Conducting a patdown and a dog sniff were clearly not related to the underlying purpose of the stop, which was to cite Chan for his tinted windows.  But from the time Chan pulled over, to the time the dog alerted on his trunk, only about seven minutes elapsed.  And Dalton spent the first two minutes of the stop speaking to Chan about the stop and obtaining his paperwork, which were unquestionably legitimate activities.  That means, at most, the stop was extended about five minutes by virtue of the warrant check, the patdown, and the dog sniff.

In the context of a traffic stop, five minutes is a very short time.  Most of us would consider a five-minute traffic citation blessedly short.  Although no evidence was presented on the issue below, it appears it would have taken Dalton at least that long to issue Chan a traffic ticket, had he decided to do so.  Chan asserts this consideration is wholly irrelevant, but as we have explained, it is actually the pivotal issue in determining whether a valid traffic stop has been transformed into an unreasonably prolonged

7

detention.  (See generally Note, *The Legality of Prolonged Traffic Stops after Herring: Brief Delays as Isolated Negligence* (2009) 76 U.Chi.L.Rev. 1781, 1787 [in assessing the legality of police detentions, "current Fourth Amendment analysis turns on whether the length of detention was unreasonably extended."].)

And while the police are required to act diligently in pursuing their suspicions during the course of a detention (*United States v. Sharpe* (1985) 470 U.S. 675, 685), they are "not required to move at top speed when executing a lawful traffic stop." (*United States v. Turvin* (9th Cir. 2008) 517 F.3d 1097, 1102 ["fourteen minutes is not unreasonably long for a traffic stop."]; *United States v. Mendez* (9th Cir. 2007) 476 F.3d 1077, 1079-1080 [eight-minute traffic stop was not unnecessarily prolonged]; *United States v. Williams* (8th Cir. 2005) 429 F.3d 767, 772 [five to six minute delay occasioned by use of drug-sniffing dog did not render traffic stop unduly prolonged].)  There is nothing wrong with an officer "'paus[ing] for a moment to take a breath, to think about what they have seen and heard, and to ask a question or so.'"  (*United States v. Turvin, supra,* 517 F.3d at p. 1102, quoting *United States v. Hernandez* (11th Cir. 2005) 418 F.3d 1206, 1212, fn. 7.)

Under the circumstances presented in this case, we cannot say Dalton's actions in patting Chan down and bringing in the drug-sniffing dog appreciably extended the stop beyond the time it would have taken to issue Chan a traffic ticket.  Therefore, the stop was not unduly prolonged in violation of Chan's Fourth Amendment rights.

Our conclusion in that regard should not be taken as an endorsement of Dalton's actions.  Although Chan appeared nervous, that did not give Dalton the right to pat him down.  Dalton did have the authority to order Chan out of his car.  (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111, fn. 6.)  But "[t]o justify a patdown of [a] driver . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."  (*Arizona v. Johnson* (2009) 555 U.S. 323, 327.)  As the trial court found, and the Attorney General impliedly concedes, there was no basis for believing

Chan had any kind of weapon. Other than refusing to give his consent to search, which he had every right to do, he was fully cooperative during the stop. Since there was no reason to believe he was armed and dangerous, there was no basis to delay the stop for a patdown. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 956.) Still, as we have explained, the patdown did not extend the stop beyond the time it would have taken Dalton to issue Chan a traffic ticket. So, the patdown is not determinative of the outcome in this case.

In arguing otherwise, Chan relies on *Illinois v. Caballes, supra,* 543 U.S. 405, which was also a dog sniff case. As here, the police dog in *Caballes* alerted on the suspect's vehicle during the course of a valid traffic stop. (*Id*. at 406.) "Based on the alert, the officers searched the trunk, found marijuana, and arrested [the driver]. The entire incident lasted less than 10 minutes." (*Ibid*.) In upholding the search, the Supreme Court rejected the claim that the dog sniff transformed the stop into an illegal detention. (*Id*. at pp. 408-410.) Given that the dog sniff occurred while the driver was being lawfully detained and it did not actually reveal anything incriminating, the court found no Fourth Amendment violation in that case. (*Ibid*.)

Except for the fact that Chan was patted down, the stop in this case was not materially different from the one that occurred in *Caballes*. In our view, the critical feature of both cases is that the police seized the drugs in a timely manner during the course of a lawful traffic stop. In seizing the drugs, the police did not unduly prolong the driver's detention by extending the stop beyond the time reasonably required to complete the duties they incurred by virtue of the stop. Therefore the seizures were not illegal. (*Illinois v. Caballes, supra,* 543 U.S. at p. 407; accord, *McGaughran, supra,* 25 Cal.3d at p. 584.)

Arguing the patdown amounted to flagrant police misconduct, Chan also draws our attention to *Herring v. United States* (2009) 555 U.S. 135. In that case, the police seized contraband from the defendant incident to an unlawful arrest. However,

9

because the arrest was due to simple negligence in the form of a bookkeeping error, the Supreme Court determined the rationale for applying the exclusionary rule — to deter deliberate police misconduct — did not apply.  (*Id*. at pp. 143-148.)  Therefore, there was no need to suppress the fruits of the search.  (*Ibid*.)

Although, as the trial court observed, the unwarranted patdown "looks bad," and has certainly provided plenty of grist for Chan's arguments on appeal, it did not change the material dynamics of the stop.  At bottom, we are convinced that neither the patdown nor the dog sniff had the effect of unreasonably prolonging the stop.  Therefore, the cocaine in Chan's trunk was lawfully seized, and his motion to suppress was rightly denied.  (*Illinois v. Caballes, supra,* 543 U.S. 405.); *United States v. Johnson, supra,* 331 Fed.Appx. at p. 410; *McGaughran, supra,* 25 Cal.3d at p. 584.)  We discern no basis for disturbing that ruling on appeal.

DISPOSITION

The judgment is affirmed.




BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

10