Filed 11/20/15  P. v. Trout CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACOB ERIK TROUT,<br><br>    Defendant and Appellant. | C077004<br><br>(Super. Ct. No. TF14000194A) |

An information charged defendant Jacob Erik Trout with transportation of marijuana (count I) and possession of marijuana for sale (count II).  After his motion to suppress evidence was denied, defendant entered a negotiated plea of no contest to count II in exchange for dismissal of count I.  The court suspended imposition of sentence and granted probation.

Defendant appeals, contending the trial court erroneously denied his suppression motion.  We disagree and will affirm the judgment.

1

## FACTS[1]

About 3:18 p.m. on March 20, 2014, a fairly clear and sunny day, California Highway Patrol (CHP) Officer Michael McDonnell, in uniform and driving his marked patrol car 55 to 65 miles per hour in the left lane (the number one lane) eastbound on Interstate 80 near Truckee, observed a Hyundai traveling at about the same speed in a 65-mile-per-hour zone in the adjacent lane (the number two lane). Before exit No. 188A to Donner Pass Road, there was a sign along the side of the road that said, "Construction Ahead" or "Road Construction Ahead." Traffic cones had been placed on the right side of the number three lane, the exit lane, to taper off and close that lane. Next there was an arrow board sign with a "large left arrow" in the shoulder before exit No. 188B. The officer explained that the left arrow meant traffic needed to move over "in the upcoming stretch of roadway." Finally, after the arrow board, there was a sign that stated, "Workers on Foot Ahead." Exit No. 188B, the exit ramp to State Route 267, had been "completely coned off and there [was] a CHP patrol unit up against the cones" with its lights activated as an "arrow board sign as well," indicating traffic should move to the left. Officer McDonnell explained that traffic was supposed to "move to the far lane away from the cones, the workers, and the construction zone," moving from the number two lane to the number one lane. In the construction zone, there were two Caltrans trucks and two Caltrans workers about 10 to 12 feet from the side of the road. In the "gore point," the triangular area that sits between an exit lane and the main freeway, there were more workers using a blower. Officer McDonnell was about 100 yards behind the Hyundai, and there was nothing impeding it from moving from its lane to the number one lane in front of the officer. The Hyundai did not move to the number one lane as it

---

[1] The facts are taken from the hearing on defendant's motion to suppress.

2

passed through the construction zone and maintained its speed of between 55 and 65 miles per hour.

After passing the construction zone, Officer McDonnell moved into the number two lane behind the Hyundai and stopped it for "failing to merge to the left, or fail[ing] to move in the construction [area] where there were CHP vehicles with their lights on," a violation of Vehicle Code section 21809.[2] Defendant was the driver.[3] A recording from

[2] All further statutory references are to the Vehicle Code. Section 21809 provides:

"(a) A person driving a vehicle on a freeway approaching a stationary authorized emergency vehicle that is displaying emergency lights, a stationary tow truck that is displaying flashing amber warning lights, or a stationary marked Department of Transportation vehicle that is displaying flashing amber warning lights, shall approach with due caution and, before passing in a lane immediately adjacent to the authorized emergency vehicle, tow truck, or Department of Transportation vehicle, absent other direction by a peace officer, proceed to do one of the following:

"(1) Make a lane change into an available lane not immediately adjacent to the authorized emergency vehicle, tow truck, or Department of Transportation vehicle, with due regard for safety and traffic conditions, if practicable and not prohibited by law.

"(2) If the maneuver described in paragraph (1) would be unsafe or impracticable, slow to a reasonable and prudent speed that is safe for existing weather, road, and vehicular or pedestrian traffic conditions.

"(b) A violation of subdivision (a) is an infraction, punishable by a fine of not more than fifty dollars ($50).

"(c) The requirements of subdivision (a) do not apply if the stationary authorized emergency vehicle that is displaying emergency lights, the stationary tow truck that is displaying flashing amber warning lights, or the stationary marked Department of Transportation vehicle that is displaying flashing amber warning lights is not adjacent to the freeway or is separated from the freeway by a protective physical barrier."

[3] The facts surrounding the search were undisputed and undeveloped at the suppression hearing. As described at the plea hearing, it appears that upon approaching the Hyundai, Officer McDonnell noted an odor of marijuana, and the subsequent search of the vehicle disclosed approximately seven pounds of marijuana in the spare tire well in the trunk. The probation report further describes what transpired: defendant initially admitted

3

the onboard "MVARS" system in Officer McDonnell's patrol car showed the infraction that resulted in the traffic stop. It was admitted into evidence at the suppression hearing.

Defense counsel asserted there was not any "probable cause" to suspect that defendant's vehicle was in violation of section 21809. Defense counsel argued there were no signs or cones "telling [defendant] that he absolutely had to move over" or "out of the number two lane." Defense counsel claimed that the distance between the officer and defendant was "considerably shorter" than the 100 yards the officer claimed, estimating the distance at "maybe 100 feet at the most." Defense counsel commented that he did not "know" if it is "practical, necessarily, to move over in front of a marked CHP SUV unit that is clearly on patrol." Defense counsel argued that defendant's speed was safe under the circumstances (defendant was traveling between 55 and 65 miles per hour, the trucks and workers were from 10 to 20 feet away from defendant's lane, and the area in which the workers stood "was totally closed off" to defendant's lane).

The prosecutor responded that defendant was on notice that he was approaching a construction zone based on the signs, the cones, the workers themselves, and the CHP unit with lights indicating motorists needed to move over. The prosecutor claimed that defendant had plenty of room and was not impeded from moving over, and that the statute required a motorist to make a lane change if practicable and not prohibited by law.

Defense counsel replied that the only notice the sign board and stationary CHP vehicle provided was to stay to the left. He argued defendant did so by being to the left of the closed-off area and traveling at a speed slower than the speed limit, which was reasonable and prudent under the circumstances.

_____

possessing a small amount of marijuana, but after Officer McDonnell requested a narcotics canine to assist in the search, the dog alerted to the presence of drugs, and officers found five bags containing more than seven pounds of marijuana. Defendant and his passengers bought the marijuana in California and were transporting it back to Texas to sell it.

In denying defendant's suppression motion, the trial court stated:

"Well, if the issue were could the signage have been a little more instructive, then the answer would be yes. But that's not the issue.

"The statute is what it is. And we are all charged with knowledge of the Vehicle Code, although I have to confess I probably could have been pulled over for this pretty frequently.

"And what I didn't see was brake lights go on on [defendant's] vehicle so, I can't infer that he looked in his rearview mirror, saw the CHP vehicle, said gee, I better not cut him off, so I better slow down instead, which the statute gives him that option to move over, or if that's not practical which, you know, I'm sensitive to the notion that you don't want to cut off a marked vehicle, than he's required to slow down and he didn't do that.

"The fact that the workers were on foot, were on the far end of the gore point isn't of significance. The vehicles were there, the emergency lights were there, that's sufficient notice to trigger the obligation under this section.

"So there was PC to stop [defendant] on a [21809]."

## DISCUSSION

Defendant contends the officer's traffic stop was not objectively reasonable in that the evidence did not show that he violated section 21809. He argues that he did nothing wrong and that his actions did not give rise to any reasonable suspicion that he had committed a crime or infraction. In the alternative, defendant argues that the evidence does not support the trial court's conclusion that he was required to slow down but failed to do so, finding that no brake lights went on on defendant's car.[4] We conclude the trial court properly ruled.

---

[4] This brings us to defense appellate counsel's request for judicial notice filed July 6, 2015. On February 23, 2015, counsel requested this court judicially notice the fact that "an automobile may slow down if the driver removes pressure or takes his/her foot off

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.]

"In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.]

"The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review. [Citations.] The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' [Citation.]" (*People v. Williams* (1988) 45 Cal.3d 1268, 1301.)

"An ordinary traffic stop is treated as an investigatory detention, i.e., a '*Terry* stop.' [Citations.] 'Under this approach, we examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." ' [Citation.] A traffic

---

the accelerator pedal without touching the brakes." This court denied that request on March 12, 2015. Notwithstanding this court's denial of the request, on July 6, 2015, defendant's appellate counsel requested judicial notice of the fact that "[a]n automobile may slow down even if its brake lights do not come on." Counsel failed to state that she had previously requested judicial notice of essentially the same fact and this court had previously denied her request. This court deferred ruling on the second request pending calendaring and assignment of the panel. By filing a second request without notice of a previous request and adverse ruling, counsel has misled this court and has attempted to obtain a second bite of the apple. Her request is again denied.

6

stop is justified at its inception if based on at least *reasonable suspicion* that the driver has violated the Vehicle Code or some other law." (*People v. Bell* (1996) 43 Cal.App.4th 754, 760-761, second italics added.)

Initially, we note that both defense counsel below and the trial court erroneously referred to probable cause as the test. The test is reasonable suspicion that defendant violated section 21809.

As we read its statement of reasons denying the suppression motion, the trial court ruled the signage does not have to expressly instruct a driver to move over; the motorist is charged with knowledge of the statutory requirements. The trial court found that the vehicle with activated emergency lights provided "sufficient notice to trigger the obligation" under section 21809. The law requires a motorist to move over, but the motorist is excused from moving over if it is impractical or prohibited by law and if the motorist slows to a reasonable and prudent speed under the circumstances. (§ 21809, subds. (a)(1) & (2).) When the trial court referred to not seeing brake lights, the court was discussing defense counsel's comment that he did not "know" whether it was "practical, necessarily, to move over in front of a marked CHP SUV unit that is clearly on patrol," suggesting it was not practical to move over because the officer was "maybe 100 feet" away, contrary to the officer's testimony that he was 100 yards away, from defendant's vehicle. The recording speaks for itself. Defendant did not move over. Whatever the exact measurement of the distance between the patrol car and defendant's car was, the recording shows there was plenty of room for defendant to make a safe lane change into the officer's lane. Defendant was not excused from doing so. Moreover, defendant maintained his speed of between 55 and 65 miles per hour. The CHP vehicle with its lights flashing was adjacent to the freeway and there was no protective physical barrier, only cones. The recording supports the trial court's denial of defendant's motion to suppress.

7

## DISPOSITION

The judgment is affirmed.

                                                 _____RAYE_____, P. J.

We concur:

_____HULL_____, J.

_____ROBIE_____, J.

8