[No. G019363. Fourth Dist., Div. Three. June 16, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MISTY ANNE CARTWRIGHT, Defendant and Appellant.

## COUNSEL

Randall Bookout, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—Analysis of contacts between police officers and passengers in motor vehicles has nettled California courts for some time. Some have held that passengers are not detained for Fourth Amendment purposes simply because they are present inside a car stopped for a traffic violation; others have reached the opposite conclusion. Even where courts have agreed on a result, they have differed over the reasoning that applies.

In this case, we try our hand at it with the guidance of United States Supreme Court precedent and conclude the typical traffic stop does not, by

itself, constitute a Fourth Amendment seizure of the passenger. Rather, a passenger is seized only if the officer physically restrains him or her or initiates a show of authority to which a reasonable innocent person in the passenger's position would feel compelled to submit, and to which the passenger actually does submit. No seizure of either sort occurred here until after the passenger volunteered she was in possession of methamphetamine, and we therefore affirm her conviction.

Officer Dean Michael of the Huntington Beach Police ran a check on the registration of a car in which Misty Anne Cartwright was a passenger. Although the vehicle displayed a current tag, computer records indicated the tag had not been issued for the license plate to which it was attached. Suspecting a violation of Vehicle Code section 4462, subdivision (b),[1] Michael pulled the car over and asked the driver, Phillip Showalter, for his license and registration. Showalter told the officer his name but was unable to produce any identification or registration for the car. Michael asked Cartwright who she was, and she gave him her name along with some sort of "identification paper."[2]

Michael ran a computer check on the names, then asked Showalter to get out of the car. While complying, Showalter volunteered he was on parole and informed the officer the car belonged to someone else—although he did not know the person's last name. Any experienced officer hearing this frequently used but almost literally incredible tale— provided by a driver who had no identification, no proof of registration, and a car with tags which Department of Motor Vehicles records showed did not belong to it—would have entertained a robust suspicion the car was stolen. And Michael did. He requested Showalter's permission to search the car for evidence of ownership, and Showalter told him to go ahead, denying there was anything illegal in the car.[3] Michael had Showalter sit on the curb and asked Cartwright to step out so he could conduct his search.

Michael never told Cartwright she was obliged to remain at the scene, but he did ask her the driver's name, to see if she would give him a different one

---

[1] That subdivision provides, "No person shall display upon a vehicle . . . any . . . license plate . . . , or permit not issued for that vehicle or not otherwise lawfully used thereon under this code." This is *not* an infraction; it is a serious and highly suspicious misdemeanor.

[2] The record never reveals what kind of paper this was, but it seems clear it was not a driver's license. According to Cartwright, she never received this "identification paper" back.

[3] Since the officer had reasonable cause to believe the car might be stolen, no permission was required. (*People* v. *Avalos* (1996) 47 Cal.App.4th 1569, 1577-1578 [55 Cal.Rptr.2d 450] [consent merely provides a constitutionally viable *alternative* to probable cause or exigent circumstances]; *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 227 [93 S.Ct. 2041, 2047-2048, 36 L.Ed.2d 854, 863]; see also *People* v. *Reyes* (1998) 19 Cal.4th 229, 236-239 [78 Cal.Rptr.2d 295, 961 P.2d 984] [reasonable suspicion not required for valid parole search].) But, of course, requesting permission to search is a good way to defuse a situation that might otherwise get out of control.

than Showalter had. He also asked her whether there was anything illegal in the car. In contrast to Showalter, Cartwright said there was. She told Michael someone had borrowed her purse and left some methamphetamine inside.[4]

Michael asked if it would be okay for him to retrieve it, and Cartwright said it would. Michael *then* directed Cartwright to have a seat on the curb next to Showalter. Along with the methamphetamine, Michael found a spoon, a digital scale, a notebook containing pay-owe sheets, and about 25 clear plastic bags of the type commonly used to package methamphetamine for sale. Cartwright eventually admitted these things were hers and was placed under arrest.

The contact, from its inception to the point at which methamphetamine and drug paraphernalia were discovered, lasted about 10 minutes. It took place in the neighborhood in which Cartwright had been living, and the car contained her belongings, which Showalter was helping her move.

After unsuccessful motions under Penal Code sections 995 and 1538.5, subdivision (i), Cartwright pled guilty to possessing methamphetamine for sale and was placed on probation. Cartwright contends she was subjected to an illegally prolonged detention[5] which tainted the consent leading to discovery of the contraband secreted in her purse. Without expressly arguing the point, she grounds her contention on the premise that she was detained by virtue of the traffic stop conducted on the car in which she was riding. We reject that premise and conclude Cartwright was not seized within the meaning of the Fourth Amendment until she was told to have a seat on the curb and she complied.

I

A majority of California cases dealing with the question appear to have concluded that a passenger is seized along with the driver during a

---

[4]Neither Cartwright nor Showalter demonstrated any natural talent for prevarication.

[5]A detention, of course, is the less intrusive of two types of "seizure," as that term is used in the Fourth Amendment; an arrest is the other. Detentions are, essentially, brief investigative stops and must be justified by a reasonable suspicion of criminal activity. Arrests, on the other hand, require probable cause, i.e., a *strong* suspicion that the individual involved has committed, is committing, or is about to commit a crime. Contacts which do not meet the definition of a seizure are deemed to be consensual encounters and require no justification for their occurrence. (*United States* v. *Sokolow* (1989) 490 U.S. 1, 7 [109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10]; *Michigan* v. *Chesternut* (1988) 486 U.S. 567, 572-574 [108 S.Ct. 1975, 1978-1980, 100 L.Ed.2d 565, 571-572]; *Berkemer* v. *McCarty* (1984) 468 U.S. 420, 439-440 [104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334]; *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 880-882 [95 S.Ct. 2574, 2580-2581, 45 L.Ed.2d 607, 616-617]; *People* v. *Souza* (1994) 9 Cal.4th 224, 230-231 [36 Cal.Rptr.2d 569, 885 P.2d 982]; *In re James D.* (1987) 43 Cal.3d 903, 911-912 [239 Cal.Rptr. 663, 741 P.2d 161].)

traffic stop and thus is entitled to raise any defense to the stop the driver might have (see, e.g., *People* v. *Bell* (1996) 43 Cal.App.4th 754, 760-765 [51 Cal.Rptr.2d 115], *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1460 [266 Cal.Rptr. 587], and *People* v. *Lionberger* (1986) 185 Cal.App.3d Supp. 1, 5 [230 Cal.Rptr. 358]). But at least two California courts have endorsed the view that a routine traffic stop does not subject a passenger to a seizure within the meaning of the Fourth Amendment. We find ourselves in agreement with them.

In *People* v. *Gonzalez* (1992) 7 Cal.App.4th 381 [8 Cal.Rptr.2d 640], a passenger stepped out of a car immediately after it was stopped for failing to signal its lane change.[6] An officer approaching the car ordered him to get back in and put his hands where they could be seen. Without directly addressing the effect of the car stop on the passenger, the court concluded he "was detained *when* the officer told him to get back in the car" (7 Cal.App.4th at p. 384, italics added)—thereby implicitly holding the passenger was not seized when the vehicle was stopped.

Next, "[i]n response to defendant's contention that he was detained when the car was stopped," the court in *People* v. *Fisher* (1995) 38 Cal.App.4th 338 [45 Cal.Rptr.2d 57] observed, "[W]e believe that in constitutional terms a passenger is not 'lawfully stopped' (contra, *People* v. *Hunt* (1990) 225 Cal.App.3d 498, 505 [275 Cal.Rptr. 367]), seized, or detained (contra, *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1460 [266 Cal.Rptr. 587]) merely because the vehicle in which he or she is riding is stopped for a traffic violation." (*People* v. *Fisher, supra,* 38 Cal.App.4th at p. 344.)

The court explained,[7] "[T]here is no indication that defendant was not free to go about his business when the car was first stopped and while [the officer] was occupied with the car's driver. Defendant made no attempt to depart and [the officer] exercised no control over defendant prior to asking him to step out of the car. Defendant had no indication that the red light on the police car was directed at him, rather than at the driver of the car for speeding. [Citation.]" (*People* v. *Fisher, supra,* 38 Cal.App.4th at pp. 343-344.)

Two years after *Fisher* was published, the United States Supreme Court decided *Maryland* v. *Wilson* (1997) 519 U.S. 408 [117 S.Ct. 882, 137

---

[6]The failure to signal a lane change does not always violate the Vehicle Code. (Veh. Code, § 22107 [signal required only when another vehicle may be affected by the movement].) Thus, it is not altogether clear whether the car in *Gonzalez* did anything that might have provided reasonable suspicion to justify a car stop in the first place.

[7]The court in *People* v. *Bell, supra,* 43 Cal.App.4th 754 criticizes *Fisher* and refuses to follow it, complaining that the court "provides no analysis" to support its conclusion. (*Id.* at p. 765, fn. 2.) In fact, the court was explicit in expressing its reasons, which we repeat, for deciding Fisher was not detained initially.

L.Ed.2d 41]. In *Wilson*, a passenger was ordered out of the car in which he was sitting after an officer observed he was sweating and extremely nervous. As Wilson exited the vehicle, a quantity of crack cocaine fell to the ground, and he was placed under arrest.

In holding that officers are entitled to order passengers out of a car as a matter of course, the majority recognized that when a traffic stop occurs, "There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers." (*Maryland* v. *Wilson, supra*, 519 U.S. at p. 413 [117 S.Ct. at p. 886, 137 L.Ed.2d at p. 47].) By noting the absence of any objective justification to detain passengers in cars stopped for traffic violations, however, the court obviously did *not* mean to imply that passengers are routinely subjected to illegal seizures. We believe it was saying passengers are not "detained" as the law uses that term.

■ It is settled that a Fourth Amendment seizure occurs only when an officer intentionally applies hands-on, physical restraint to a suspect (*California* v. *Hodari D.* (1991) 499 U.S. 621, 626 [111 S.Ct. 1547, 1550-1551, 113 L.Ed.2d 690, 697]; *Brower* v. *Inyo County* (1989) 489 U.S. 593, 596-597 [109 S.Ct. 1378, 1381, 103 L.Ed.2d 628, 635]) or initiates a show of authority to which a reasonable innocent person would feel compelled to submit (*Florida* v. *Bostick* (1991) 501 U.S. 429, 434, 438 [111 S.Ct. 2382, 2388, 115 L.Ed.2d 389, 398]), and to which the suspect actually *does* submit (*California* v. *Hodari D., supra*, 499 U.S. at p. 626 [111 S.Ct. 1547, 1550-1551, 113 L.Ed.2d at p. 697]) for reasons that are solely related to the official show of authority. (*Florida* v. *Bostick, supra*, 501 U.S. at pp. 436-437 [111 S.Ct. at p. 2387, 115 L.Ed.2d at pp. 399-400]; *Brower* v. *Inyo County, supra*, 489 U.S. at pp. 597-598 [109 at p. 1382, 103 L.Ed.2d at p. 636]; *INS* v. *Delgado* (1984) 466 U.S. 210, 215, 218 [104 S.Ct. 1758, 1762-1764, 80 L.Ed.2d 247, 254, 256].)

■ When the siren and the light on top of a police car are turned on, it is the driver's attention the officer is hoping to capture—not the passenger's. The passenger has typically done nothing wrong and has no power to respond to the police directive. His or her presence in the car is merely fortuitous. (See *People* v. *Grant, supra*, 217 Cal.App.3d at p. 1460 ["the stop and detention of [the passenger] was merely incident to his being a passenger in a lawfully stopped vehicle"].) The driver is the one the officer is seeking to restrain, and the driver is the one who, by stopping the car, submits to the officer's assertion of authority. The passenger simply has no say in the matter. Without submission by the person to whom the show of authority is directed, no Fourth Amendment seizure can occur absent the

imposition of some physical restraint. The fact a passenger is stopped "as a practical matter" (*Maryland* v. *Wilson, supra*, 519 U.S. at pp. 413-414 [117 S.Ct. at p. 886, 137 L.Ed.2d at p. 47]) thus has no Fourth Amendment significance.

Consistent with this analysis, the dissenting justices in *Wilson* observed, any "intrusion on the passengers' liberty occasioned by the initial stop of the vehicle . . . was a necessary by-product of the lawful detention of the driver. But the passengers had not yet been seized at the time the car was pulled over, any more than a traffic jam caused by construction or other state-imposed delay not directed at a particular individual constitutes a seizure of that person." (*Maryland* v. *Wilson, supra*, 519 U.S. at p. 420 [117 S.Ct. at p. 889, 137 L.Ed.2d at p. 51] (dis. opn. of Stevens, J.).) While the majority took pains to answer the points raised in the dissent which conflicted with its opinion, it made no attempt to disabuse the dissenters of their view on this particular point—and the reason for that choice seems manifest: They were right.

A typical traffic stop, such as the one occurring here, does not by itself implicate the Fourth Amendment rights of a passenger in the stopped vehicle. We respectfully disagree with the courts in *People* v. *Bell, supra*, 43 Cal.App.4th 754 and *People* v. *Grant, supra*, 217 Cal.App.3d 1451 to the extent they conclude passengers are detained from the inception of a traffic stop. We also disagree with the court in *People* v. *Lionberger, supra*, 185 Cal.App.3d Supp. 1—even though, at first blush, the cases upon which it relies share a seductive logic.

To determine whether passengers arrested for being under the influence of controlled substances had "standing" under *Rakas* v. *Illinois* (1978) 439 U.S. 128 [99 S.Ct. 421, 58 L.Ed.2d 387][8] to contest the stop of the car in which they were riding, the court in *Lionberger* sought guidance from appellate courts in Iowa, Rhode Island, and Illinois. It began by quoting *People* v. *Kunath* (1981) 99 Ill.App.3d 201 [54 Ill.Dec. 621, 425 N.E.2d 486, 489], in which the Illinois court held, " '[A] passenger . . . can challenge the stopping of the vehicle since his [or her] personal liberty and freedom were intruded upon by that act. [Citations.] The Fourth and Fourteenth Amendments of the U.S. Constitution forbid unreasonable searches *and seizures*, and it is clear that stopping an automobile and . . . its occupants constitutes

---

[8]*Rakas* teaches that the concept of "standing" has been "dispens[ed] with" and replaced by an inquiry which seeks to determine whether the challenged conduct violated the personal Fourth Amendment rights of the defendant. (*Rakas* v. *Illinois, supra*, 439 U.S. at pp. 138-140 [99 S.Ct. at p. 427-428, 58 L.Ed.2d at pp. 398-399]; *Minnesota* v. *Carter* (1998) 525 U.S. 83, __ [119 S.Ct. 469, 472-473, 142 L.Ed.2d 373, 379].) But the term has demonstrated a vampiric persistence (see, e.g., *People* v. *Bell, supra*, 43 Cal.App.4th at pp. 760-765), and if the United States Supreme Court cannot drive a stake through its heart, we doubt that we can.

a "seizure" of those persons. [Citations.]' " (*People* v. *Lionberger, supra,* 185 Cal.App.3d at p. Supp. 5.)

Next, it cited *Rhode Island* v. *DeMasi* (R.I. 1980) 419 A.2d 285, 294, for the proposition that passengers are seized because, by stopping the car in which they were riding, "the officers effectively inhibited [their] free movement." And finally, the court relied on *State* v. *Eis* (Iowa 1984) 348 N.W.2d 224, 226, where the Iowa Supreme Court opined, "No principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped . . . their freedom of movement is equally affected."

As reasonable as each of the phrases quoted from these three cases initially appears, none of them is binding, none purports to apply the United States Supreme Court's current definition of what constitutes a "seizure" within the meaning of the Fourth Amendment, and none was decided recently enough to be informed by the reasoning in *Maryland* v. *Wilson, supra,* 519 U.S. 408 [117 S.Ct. 882, 137 L.Ed.2d 41]. We are therefore unable to follow their lead. We are obliged to heed the United States Supreme Court, the ultimate arbiter of the meaning of the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744].) Its decisions compel a contrary conclusion: Passengers are not seized within the meaning of the Fourth Amendment simply because they occupy a seat in a vehicle which a police officer stops for a violation of the Vehicle Code.

II

The determination Cartwright was not detained by virtue of the traffic stop does not complete our inquiry. It remains for us to determine whether Michael did or said anything during the traffic stop which would constitute a show of authority that would compel a reasonable innocent person to submit. Further, we must decide whether the discovery of contraband in her purse was the product of any such seizure. We conclude Cartwright was seized only *after* divulging she possessed methamphetamine. Consequently, discovery of the contraband was not the product of a Fourth Amendment seizure, and suppression would not have been appropriate.[9]

After Officer Michael made contact with the driver and found he had no license or registration in his possession, he *asked* Cartwright if she had any

---

[9]Although neither side had an opportunity to brief the issue, and we do not base our opinion on the point, we note the United States Supreme Court has now made it clear that passengers, like drivers, "possess a reduced expectation of privacy with regard to the property . . . they transport in cars" (*Wyoming* v. *Houghton* (1999) 526 U.S. 295, __ [119 S.Ct. 1297, 1302, 143 L.Ed.2d 408, 416]), and "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the

identification. Because nothing in the content or form of the question imparted any compulsion to comply, there is no basis for finding Cartwright was under the kind of restraint associated with a Fourth Amendment detention. It is now well established that a mere request for identification does *not* transmogrify a contact into a Fourth Amendment seizure. (*People* v. *Lopez* (1989) 212 Cal.App.3d 289, 291 [260 Cal.Rptr. 641].) And her decision to cooperate by producing some sort of identification paper appears to have been wholly consensual.

Next, Michael *asked* Cartwright to step out of the car so he could conduct the search Showalter had authorized. Again, a mere request, as opposed to a command directing the person's movements, does not constitute a Fourth Amendment restraint.[10] And Cartwright was certainly not seized within the meaning of the Fourth Amendment simply because Officer Michael asked her the name of the driver and whether the car contained anything illegal. (See *Ohio* v. *Robinette* (1996) 519 U.S. 33 [117 S.Ct. 417, 136 L.Ed.2d 347, 148 A.L.R. Fed. 739] [officer need not advise suspect he or she is free to go before asking if vehicle contains contraband, and such a question does not create a Fourth Amendment seizure]; *Florida* v. *Royer* (1983) 460 U.S. 491, 497 [103 S.Ct. 1319, 1323-1324, 75 L.Ed.2d 229, 236] [putting questions to a person willing to listen does not create a seizure within the meaning of the Fourth Amendment]; *U.S.* v. *Ayon-Meza* (9th Cir. 1999) 177 F.3d 1130, 1133 [officer asking whether traveler at airport has drugs during consensual conversation does not implicate the Fourth Amendment].)

---

search." (*Id.*, at p. __ [119 S.Ct. at p. 1304].) Here, Officer Michael likely had probable cause to believe the car in which Cartwright was riding was stolen, and he would therefore have been entitled to search every item in the car which may have shed light on the identity of its owner. As Justice Scalia observed for the majority in *Houghton*, "[N]either [precedent] nor the historical evidence it relied upon admits of a distinction among packages or containers based on ownership. When there is probable cause to search for contraband [or other evidence] in a car, it is reasonable for police officers—like customs officials in the Founding era—to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband [or other criminative evidence] *in* the car." (*Id.*, at p. __ [119 S.Ct. at p. 1301].)

[10]The court in *People* v. *Fisher*, *supra*, 38 Cal.App.4th 338 spent little time analyzing whether the officer's request to the passenger to exit the car initiated a Fourth Amendment seizure, instead correctly observing that a detention was justified because "[i]t would be unreasonable and unsafe to require the officer to search the car for contraband while the passenger remained seated in[side] the car." (*Id.* at p. 345.) We note, however, that a mere request to exit a vehicle, as opposed to a command, is insufficient in and of itself to transform the contact into a detention. As the high court has explained, a Fourth Amendment seizure does not occur unless the contact "loses its consensual nature." (*Florida* v. *Bostick*, *supra*, 501 U.S. at p. 434 [111 S.Ct. at p. 2386, 115 L.Ed.2d at p. 398].)

Rather, it appears to us that no Fourth Amendment seizure occurred until Officer Michael responded to Cartwright's admission that she was in possession of methamphetamine by *directing* her to sit on the curb and she complied. By then, she had already given consent to search her purse. Thus, her consent could not have been the product of a detention. (Cf. *California* v. *Hodari D.*, *supra*, 499 U.S. 621, 629 [111 S.Ct. 1547, 1552, 113 L.Ed.2d 690, 699] [no seizure had occurred when Hodari abandoned the rock cocaine while being chased by the officer; seizure occurred only when he was subsequently tackled].)

From the moment he asked her to step out of the vehicle until the moment she revealed her purse contained methamphetamine, Officer Michael did nothing and said nothing to prevent Cartwright from leaving, and she made no attempt or request to do so. As she explained to the magistrate during the suppression hearing, although the car was stopped in her neighborhood, she stayed with it because she had property inside that Showalter was helping her move. Thus, while she could have terminated the encounter with the officer by simply walking away and leaving Showalter to his own devices, Cartwright chose to stay with the car and answer the officer's questions. Why? Because she did not want to abandon her things and her ride.

Her argument the officer *would* have stopped her had she tried to leave the area is unavailing because it is based solely upon speculation. The burden is on the individual to assert her right to terminate the encounter, and Cartwright never asserted her right. If she had, and the officer *then* decided to stop her, the Fourth Amendment would have been engaged. But she made no such attempt. The focus we must maintain is on what the officer actually said and did. Here, Officer Michael said and did nothing to communicate to Cartwright, much less to an objectively reasonable innocent person, that she was obliged to stay with the car or answer his questions. A comparison of this case with Supreme Court authority makes this plain.

As we have already explained, the United States Supreme Court has said that no Fourth Amendment seizure occurs absent hands-on physical restraint (*California* v. *Hodari D.*, *supra*, 499 U.S. at p. 626 [111 S.Ct. at p. 1552, 113 L.Ed.2d at p. 697]) unless the police initiate a show of authority, to which *the objectively reasonable innocent person* would feel compelled to submit, and to which the suspect actually does submit for reasons solely attributable to the police show of authority. (Cf. *Florida* v. *Bostick*, *supra*, 501 U.S. at pp. 436-438 [111 S.Ct. at pp. 2387-2388, 115 L.Ed.2d at pp. 399-401] [Bostick was not seized if his decision to stay on a bus bound for Atlanta was prompted by his desire to reach his destination and not by the official show of authority]; *INS* v. *Delgado*, *supra*, 466 U.S. at p. 218 [104 S.Ct. at

pp. 1763-1764, 80 L.Ed.2d at p. 256] [garment workers not seized because their decisions to remain in their factories and submit to agents' requests were not caused solely by the show of authority but by their desire to stay on the job for which they were being paid].) Put another way, under *Bostick* and *Delgado*, unless an individual's decision to submit to an officer's request is made solely in response to a show of authority, and "a reasonable person would [not] feel free to decline the officer['s] requests or otherwise terminate the encounter" (*Florida* v. *Bostick, supra,* 501 U.S. at p. 436 [109 S.Ct. at p. 2387, 115 L.Ed.2d at p. 400]), the contact lies outside the purview of the Fourth Amendment.

In *Bostick,* the defendant was a passenger on a bus traveling from Miami to Atlanta. During a stopover in Fort Lauderdale, two officers boarded the coach, picked Bostick out of the crowd, and sidled down the aisle in tandem to the seat he occupied. After examining his ticket and identification and finding them in order, they told him they were narcotics officers on the lookout for drug traffickers, and they requested permission to search his bags for contraband. According to the officers, they conducted a consent search of Bostick's bags and discovered he was transporting cocaine. (*Florida* v. *Bostick, supra,* 501 U.S. at pp. 431-432 [111 S.Ct. at p. 2385, 115 L.Ed.2d at pp. 396-397].) Bostick later insisted he provided no such consent to search,[11] but he also argued that any consent he *may* have given was tainted by intimidating remarks made by the persistent officers. (*Ibid.*)

Since no factual findings had been made by the trial court, the Supreme Court reversed and remanded the case so the Florida courts could determine whether Bostick was, in fact, seized and whether he gave the officers permission to search (*Florida* v. *Bostick, supra,* 501 U.S. at p. 437 [111 S.Ct. at pp. 2387-2388, 115 L.Ed.2d at p. 400]). But to provide direction for the lower court's reconsideration, the high court affirmed that no Fourth

---

[11]Cartwright also claims she never actually gave consent to search, and she insists it is unreasonable to suggest she did, since she knew her purse contained contraband. In the context of reviewing a motion under Penal Code section 1538.5, subdivision (i), we are obliged to "disregard the findings of the trial court and review the determination of the magistrate." (*People* v. *Nonnette* (1990) 221 Cal.App.3d 659, 664 [271 Cal.Rptr. 329].) It was, of course, the magistrate's responsibility to assess credibility and decide whether Cartwright or Officer Michael was telling the truth. The magistrate believed the officer, and we have no authority to second-guess that determination here. We note, however, the Supreme Court rejected an identical argument made by Bostick — "that he must have been seized because no reasonable person would freely consent to a search of luggage that he or she knows contains drugs" (*Florida* v. *Bostick, supra,* 501 U.S. at pp. 437-438 [111 S.Ct. at p. 2388, 115 L.Ed.2d at p. 400]) — concluding, "[t]his argument cannot prevail because the 'reasonable person' test presupposes an *innocent* person." (*Id.* at p. 438 [111 S.Ct. at p. 2388, 115 L.Ed.2d at p. 400]; accord, *People* v. *James* (1977) 19 Cal.3d 99, 113-114 [137 Cal.Rptr. 447, 561 P.2d 1135].)

Amendment seizure results simply because "police officers . . . approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions." (*Id.* at p. 439 [ 111 S.Ct. at p. 2388, 115 L.Ed.2d at p. 401]; cf. *U.S.* v. *Ayon-Meza, supra,* 177 F.3d 1130, 1133 ["[W]e must recognize that there is an element of psychological inducement when a representative of the police . . . initiates a conversation. But it is not the kind of psychological pressure that leads, without more, to an involuntary stop. [Citation.] It is even further from an arrest."].)

To determine whether Bostick was seized, the Supreme Court directed that the trial court focus its inquiry on whether a *reasonable innocent person* in Bostick's place would have felt free to terminate his encounter with the officers by getting off the bus or refusing permission to search. Still, while the court purported not to decide the issue, it seemed to augur the outcome by tersely recognizing that "Bostick's freedom of movement was restricted by a factor independent of police conduct—*i.e.*, by his being a passenger on a bus" (*Florida* v. *Bostick, supra,* 501 U.S. at p. 436 [111 S.Ct. at p. 2387, 115 L.Ed.2d at p. 400]), and by referring to the case as "analytically indistinguishable from" *INS* v. *Delgado, supra,* 466 U.S. 210 [104 S.Ct. 1758, 80 L.Ed.2d 247].

In *Delgado,* armed Immigration and Naturalization Services agents, equipped with badges and walkie-talkies, entered garment factories looking for illegal aliens. They were determined to question everyone present, and they positioned guards at all the exits to make certain they would. (*INS* v. *Delgado, supra,* 466 U.S. at p. 218 [104 S.Ct. at p. 1763, 80 L.Ed.2d at p. 256].) Still, no one who was eventually arrested actually tried to leave, and the officers only minimally intruded upon the work that was being done. The workers later complained they had been detained illegally and dissuaded from leaving the factories by the armed guards, but the Supreme Court classified the encounters as consensual. (*Ibid.*) The majority explained that while the workers might not have been allowed to leave their factories had they tried to do so, what kept them at their work sites was not the show of authority but their "voluntary obligations to their employers." (*Ibid.*) Because of the existence of this "independent factor," the court concluded the workers were never seized within the meaning of the Fourth Amendment. (*Ibid.*)

Applying *Bostick* and *Delgado* here, we are convinced Cartwright's encounter with Officer Michael, until she was told to sit on the curb, was one with which the Fourth Amendment is not concerned. In the first place, we have trouble identifying any "show of authority" in the officer's mere

*requests* that she exit the vehicle and provide the name of the person driving the car in which she was riding, much less a show of authority which would cause an objectively *reasonable innocent person* to feel *compelled* to remain at the scene and acquiesce in the officer's succeeding requests. Accordingly, we reject Cartwright's suggestion that her consent was the result of "coercion and duress" simply because the officer made these requests and failed to ensure she was fully aware of her right to leave. (See *People* v. *James, supra*, 19 Cal.3d at pp. 115-116 [valid consent is not dependent on an advisement of the right to refuse].)

Second, as in *Delgado* and *Bostick*, it appears Cartwright's submission was not traceable to Michael's conduct alone. It is clear from her own testimony her decision to cooperate was not prompted by anything he said or did but, instead, by an independent factor—her unwillingness to abandon her property and her transportation. But whatever her reason for submitting, we are convinced a *reasonable innocent person* in Cartwright's position, having never been directed to stay at the scene, would have known she was free to terminate her encounter with the officer and leave the area once she was out of the car.

We agree that only a minuscule few will actually act on that freedom, but that is because the car stop represents a lesser inconvenience than the alternative, not because they feel constrained to remain. In analyzing these issues, we apply the objectively reasonable innocent person test, not the actual guilty suspect test, not the reasonable criminal test, and not what one commentator has called "the ordinary ignorant person test." (Dunn, *It's Time to Flip Wilson: The Consensual Encounter as a Law Enforcement Investigative Tool v. The "Right to Be Left Alone"* (1992) 20 Western St.U. L.Rev. 47, 64-78; see also *Florida* v. *Bostick, supra*, 501 U.S. at p. 438 [111 S.Ct. at p. 2388, 115 L.Ed.2d at p. 400].)

As the United States Supreme Court recently reiterated, " '[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself [or herself] about the particular policies that affect his [or her] destiny.' " (*City of West Covina* v. *Perkins* (1999) 525 U.S. 234, __ [119 S.Ct. 678, 682, 142 L.Ed.2d 636, 643], quoting *Atkins* v. *Parker* (1985) 472 U.S. 115, 131 [105 S.Ct. 2520, 2530, 86 L.Ed.2d 81, 94].) And we are convinced the reasonable innocent person in Cartwright's position would have felt she had no legal obligation to accede to the officer's requests until those requests started sounding like commands.

We think this is a reasonable premise. While we are all familiar with the sinking feeling a driver experiences upon seeing police lights in the

rearview mirror, few of us sense impending doom when we are in the passenger seat. The passenger is not a participant in the stop, but an observer. And we are confident few feel fettered by the driver's problems. We therefore conclude Cartwright's detention was not unduly prolonged because she was not detained until there was probable cause to arrest her. The motion to suppress was properly denied. The order granting probation is affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied July 12, 1999, and appellant's petition for review by the Supreme Court was denied October 6, 1999. Mosk, J., was of the opinion that the petition should be granted.