[No. G023144. Fourth Dist., Div. Three. Dec. 20, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER PONCE CASTELLON, Defendant and Appellant.

COUNSEL

Michael Ian Garey for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kyle Niki Shaffer and Angela K. Rosenau, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Javier Ponce Castellon pled guilty to possession of heroin after his motions to suppress evidence and set aside the information were denied. On appeal, Castellon argues that the heroin found on his person should have been suppressed as the result of an illegal detention and search. We affirm.

## FACTS

Officer John Hibbison was on patrol when he saw a car with expired tags pulling away from the curb. Hibbison turned on his overhead lights and the

car immediately pulled over and stopped. As he got out of his police car, he saw Castellon, a passenger in the stopped car, simultaneously start to get out. Hibbison recognized Castellon as a member of the Alley Boys gang with whom he had been "in contact" since 1990: He had once responded to a shooting that had occurred at Castellon's home at which Castellon was present but was not arrested; on another occasion Hibbison had conducted "a car stop where I had stopped him." Hibbison said he had never known Castellon to have a weapon on his person.

As Hibbison got out of his car, he told Castellon not to get out of the car. Castellon nonetheless got out of the car, but stopped about three feet away from it. Hibbison could not recall if Castellon "just stopped or if I told him to stop." As Hibbison walked toward him from about 15 or 20 feet away, he asked Castellon if he had any weapons. Castellon responded that he did not. Hibbison then asked him if he had any narcotics on his person. He replied that he did not have any narcotics. Hibbison then asked if he could search him, and Castellon consented.[1] In each of Castellon's front pockets, Hibbison found a $1 bill containing a residue substance that tested positive for heroin.

Hibbison testified that "[p]robably less than a minute" elapsed from the time Castellon opened his car door to the time he completed his search. He said his first words to Castellon as he approached were to ask him "if he had any weapons on him." He said his "concern was for my own safety, and that's why I asked him if he had any weapons on him."

The trial court hearing the motion to suppress found there was a legal detention of the car in which Castellon was a passenger, and the requests to search for weapons and for consent to search "under the circumstances of this case, with this officer having specific knowledge that the defendant is an Alley Boy[s] gang member, [are] certainly justified." It found that "under the totality of circumstances" the search was "not illegal" and denied the motion. The trial court hearing the motion to set aside the information denied that motion without comment.

---

[1]Hibbison could not recall the exacts words he used to ask for Castellon's consent, nor the words Castellon used in granting consent, but he testified Castellon did consent to the search. In finding there was consent, the trial court said: "And even though the consent is not specifically set out—that is, the officer can't exactly recall it—this in a sense is a problem of the defendant's own making in light of the fact that he was given the opportunity to divert clear back in November of 1995, did not accomplish his diversion, and then evidently goes to parts unknown, thereby aging this case significantly between the arrest date of October '95 and the date of this preliminary hearing [(November 24, 1997)]."

DISCUSSION

I

██ Castellon first argues the initial stop of the car was unreasonable. The car was stopped on October 12, and the tags had expired at the end of September. Castellon does not dispute the tags had expired; rather, he argues that displaying tags with an expiration date 12 days prior to the date of the stop "is so meaningless as to provide no basis for a stop."

Vehicle Code section 4601 provides that vehicle registration shall be renewed prior to the expiration of the registration year. The tags on the license plate of the vehicle in which Castellon was a passenger indicated that vehicle's registration had not been properly renewed. Hibbison's stop of the vehicle was predicated upon probable cause that a Vehicle Code violation had occurred. Nothing more is required; the stop was proper. (See *Whren* v. *United States* (1996) 517 U.S. 806, 810 [116 S.Ct. 1769, 1772, 135 L.Ed.2d 89] ["As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."].)

Castellon complains that Hibbison failed to conduct any traffic investigation, and that his authority was limited to taking the time to inquire into the Vehicle Code violation and issue a citation. He argues Hibbison used the routine traffic stop as an excuse to investigate other matters. But that is not what happened here. At the point where Castellon failed to follow Hibbison's order to remain in the car and Hibbison became concerned for his safety, the stop ceased to be a routine traffic stop. As a result of Castellon's actions, Hibbison's initial focus shifted from a routine investigation of a Vehicle Code violation to officer safety.

II

██ Castellon next argues that even if the initial car stop was valid, the detention which occurred when Hibbison ordered him to remain in the car was unlawful because there was no evidence any crime had been committed or Castellon was connected to any criminal activity.

Our analysis begins with a determination as to whether Castellon was detained for Fourth Amendment purposes, and if so, at what point. Relying on *People* v. *Bell* (1996) 43 Cal.App.4th 754 [51 Cal.Rptr.2d 115], the Attorney General argues a passenger in a vehicle that was lawfully stopped is, like the driver, lawfully detained. Recently, in *People* v. *Cartwright*

(1999) 72 Cal.App.4th 1362 [85 Cal.Rptr.2d 788], this court rejected that approach. (*Id.* at p. 1369.) ██ Citing *Maryland* v. *Wilson* (1997) 519 U.S. 408 [117 S.Ct. 882, 137 L.Ed.2d 41], we concluded, "Passengers are not seized within the meaning of the Fourth Amendment simply because they occupy a seat in a vehicle which a police officer stops for a violation of the Vehicle Code." (*People* v. *Cartwright, supra,* 72 Cal.App.4th at p. 1369.) In doing so, "[w]e respectfully disagree[d] with the courts in *People* v. *Bell, supra,* 43 Cal.App.4th 754 and *People* v. *Grant* [(1990)] 217 Cal.App.3d 1451 [266 Cal.Rptr. 587] to the extent they conclude passengers are detained from the inception of a traffic stop." (*People* v. *Cartwright, supra,* 72 Cal.App.4th at p. 1368.) Accordingly, Castellon was not lawfully detained simply because the vehicle in which he was riding was stopped by Hibbison.

A person is seized for Fourth Amendment purposes when the officer's words would convey to a reasonable person that he or she is being ordered to stop, and the person complies with that order. (*California* v. *Hodari D.* (1991) 499 U.S. 621, 628, 629 [111 S.Ct. 1547, 1551, 1552, 113 L.Ed.2d 690].) ██ After Hibbison told Castellon to remain in his car, Castellon left the car, but then stopped about three feet from the car, apparently in response to Hibbison's order and approach. At the point where Castellon submitted to Hibbison's authority, he was seized within the meaning of the Fourth Amendment.

Having determined a seizure occurred, our inquiry turns to whether Hibbison's detention of Castellon was reasonable. ██ " '[T]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security," [citations], and that reasonableness 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." ' " (*Maryland* v. *Wilson, supra,* 519 U.S. at p. 411 [117 S.Ct. at pp. 884-885].) In holding that a police officer could order the passenger *out* of the vehicle during a routine traffic stop, the United States Supreme Court found officer safety to outweigh the minimal additional intrusion on the personal liberty of the passenger who is "already stopped by virtue of the stop of the vehicle." (*Id.* at p. 414 [117 S.Ct. at p. 886].)

██ Castellon attempts to distinguish *Maryland* v. *Wilson, supra,* 519 U.S. 408 on the ground that while a police officer may order a passenger to leave a vehicle for safety purposes, the officer may not order a passenger to *stay in* a vehicle without reasonable suspicion to detain him or her because the passenger is free to leave. We disagree; whether the passenger is ordered to stay in the car or got out of the vehicle is a distinction without a

difference. (See *id.* at p. 414 [117 S.Ct. at p. 886] ["The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car."].) Further, the inconvenience and intrusion are certainly *less* when the passenger is simply ordered to remain seated in the car than when he or she is ordered out of the vehicle. If the minimal additional intrusion on the personal liberty of the passenger ordered out of the vehicle cannot trump the safety of the officer, then surely the slight inconvenience of ordering the passenger to remain seated can be justified by an officer's concerns.

Here, Hibbison was the only officer present at the stop. He testified he saw Castellon, whom he recognized as a gang member, immediately begin to leave the car as Hibbison opened his car door. He said he immediately ordered Castellon to stay in the car and did so out of concern for his safety. Hibbison's subsequent actions lend support to this rationale. His two questions as he approached Castellon were whether he had any weapons or narcotics, both questions pertinent to officer safety. (See *People* v. *Autry* (1991) 232 Cal.App.3d 365, 369 [283 Cal.Rptr. 417] ["a contaminated hypodermic needle is one of the more deadly objects one can imagine outside of firearms"].) After Castellon gave negative responses to both questions, Hibbison asked to search him and Castellon gave his consent. This entire sequence of events transpired very quickly, in the space of less than one minute.

It is not unreasonable for a lone officer to have concerns for his safety when, upon making a routine traffic stop, he observes there are two people in the car, and he recognizes the passenger as a gang member with whom he has had previous contacts. Hibbison reacted immediately when he saw Castellon start to emerge from the car by ordering him to stay in the car. Hibbison made the judgment that under those circumstances he preferred to have Castellon remain in the car as he approached, and we will not second-guess Hibbison's reasonable in-the-field call; it was for the officer to decide whether his personal safety was better preserved by ordering Castellon to stay inside the car or by ordering him out of the vehicle.

In *People* v. *Cartwright, supra,* 72 Cal.App.4th 1362, we noted that while "only a minuscule few will actually act on that freedom," the passenger there was "free to terminate her encounter with the officer and leave the area once she was out of the car." (*Id.* at p. 1374.) Castellon argues that he was one of the "minuscule few," and as such he was free to terminate his encounter with Hibbison and leave the scene. Not quite. As *Maryland* v. *Wilson, supra,* 519 U.S. 408 makes clear, an officer may minimally intrude on the freedom of the passengers out of concern for his or her own safety. Hibbison's directive

to Castellon was reasonable under the circumstances and did not offend the Fourth Amendment.[2] Presumably, once the scene was secured and Hibbison began processing the traffic violation, Castellon would then have been free to terminate the consensual encounter and walk away, just as Cartwright was. But once Castellon disobeyed the officer's reasonable directive, this became more than a routine traffic stop, and the officer was justified in ordering him to stop.

Finally, relying on *People* v. *Gonzalez* (1992) 7 Cal.App.4th 381 [8 Cal.Rptr.2d 640], Castellon argues that a passenger may not be ordered to stay in a vehicle in the absence of specific cause to detain him. The *Gonzalez* court stated, "Inchoate concerns for officer safety may justify certain minimal intrusions" but "a reasonable, articulable suspicion of criminal activity is needed to justify a detention. [Citations.]" (*Id.* at p. 386.)

We have some difficulty with the idea that the fear expressed by the officers in *Gonzalez* was "inchoate." It seems to us that police officers who make a traffic stop and are confronted with the highly unusual (at least in California) circumstance of a passenger getting out of the car have every reason to fear for their safety. We see no need for any further development of such fear.[3] But *Gonzalez* may have been right on its facts, and we need not decide that case.

The case before us involves a lone officer confronted by a known gang member whose every step away from the car would, if allowed, make it

---

[2]*People* v. *Cartwright, supra,* 72 Cal.App.4th 1362 stands for the proposition that the passenger in a vehicle stopped for a traffic violation may terminate a consensual encounter with the police and leave the scene. Certainly it does not stand for the proposition that after a traffic stop, the officer must stand by while the doors of the vehicle fly open and passengers leave in all directions. An officer making a traffic stop may immediately take the reasonable steps he or she deems necessary to secure the officer's safety, including ordering a passenger to remain in or to get out of the vehicle, without violating the Fourth Amendment.

[3]Nor are we as concerned as the *Gonzalez* court by the idea that we are approving a detention without a reasonable, articulable suspicion of criminal activity. There was a reasonable, articulable suspicion of criminal activity here: that's why the traffic stop was made. To the extent Castellon was detained, it was only to allow the officer safely to sort out that criminal conduct. In that respect we see it as analogous to stopping people leaving a house for which officers have obtained a search warrant. (See *Michigan* v. *Summers* (1981) 452 U.S. 692 [101 S.Ct. 2587, 69 L.Ed.2d 340]; see also *People* v. *Glaser* (1995) 11 Cal.4th 354, 365 [45 Cal.Rptr.2d 425, 902 P.2d 729] [the "initial brief detention of defendant was justified by the need to determine what connection defendant, who appeared to be more than a stranger or casual visitor, had to the premises, and by the related need to ensure officer safety and security at the site of a search for narcotics"]; *People* v. *Hannah* (1996) 51 Cal.App.4th 1335, 1343-1347 [59 Cal.Rptr.2d 806] [holding that when serving an arrest warrant, police could briefly detain a visitor even in the absence of evidence of criminal activity in progress to determine who he was and whether he had information concerning the subject of the warrant, and to protect the officers' safety].)

increasingly difficult for the officer to assure his own safety. Hibbison testified this caused him to fear for his safety. "Regrettably, traffic stops may be dangerous encounters." (*Maryland* v. *Wilson, supra,* 519 U.S. at p. 413 [117 S.Ct. at p. 885].) "[T]he same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger." (*Ibid.*)

We take the Supreme Court at its word, that word being "weighty," and with that guidance, and after balancing Hibbison's concerns for his safety in the presence of a recognized gang member against the intrusion on Castellon's freedom of movement, we find the officer's actions to be reasonable and the detention justified. Hibbison's concern for his safety as a police officer outweighed the minor inconvenience a brief detention imposed upon Castellon. Nor was the length of the detention unreasonable. Hibbison asked two standard questions in a short space of time, both relevant to officer safety. After receiving the answers, he asked for, and was granted, permission to perform the search that turned up the narcotics. Because the detention was neither unreasonable nor prolonged, it did not violate Castellon's Fourth Amendment rights, and the motions to suppress and set aside the information were properly denied.

The judgment is affirmed.

Bedsworth, J., and Scoville, J.,* concurred.

A petition for a rehearing was denied January 10, 2000, and appellant's petition for review by the Supreme Court was denied March 29, 2000. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Fourth District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.