Filed 6/8/16  P. v. Wallace CA1/3
On rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS DARNELL WALLACE,<br><br>    Defendant and Appellant. | A143375<br><br>(Contra Costa County<br>Super. Ct. No. 5-140063-9) |
| In re THOMAS DARNELL WALLACE,<br><br>    On Habeas Corpus. | A147900 |

Following an unsuccessful motion to suppress evidence essential to his conviction, defendant pled guilty to a misdemeanor charge of possession of heroin. On appeal, he contends the court erred in denying his motion to suppress the drugs recovered in a search of his car and alternatively, that by failing to preserve the legality of the search as an issue for appeal by reasserting the motion to suppress in the superior court, his trial counsel provided ineffective assistance of counsel. In an opinion issued on February 9, 2016, we agreed that defendant's consent to search the car was the product of an illegal detention and that the judgment must be reversed.

In a petition for rehearing, the Attorney General argued for the first time that defendant's arguments were not cognizable on appeal because, after his suppression motion was denied at his preliminary hearing, he had failed to renew the motion in the trial court and obtain a certificate of probable cause. (Cal. Rules of Court, rule 8.304(b); *People v. Richardson* (2007) 156 Cal.App.4th 574, 595-596.) The Attorney General

1

acknowledged that this new argument was contrary to the prior express concession in respondent's brief that this court *should* review the legality of the search[1] and was not raised in oral argument during which the merits of the appeal were strongly contested. As the Attorney General belatedly argued, a challenge to the court's jurisdiction can be made at any time and the People cannot waive the certificate of probable cause requirement "by silence, or even by affirmative consent to the appeal proceeding in spite of noncompliance with this rule." (*People v. Ballard* (1985) 174 Cal.App.3d 982, 985.) Accordingly, this court reluctantly granted the petition for rehearing.

At that time, however, we also requested briefing on whether this court should treat the appeal as a petition for a writ of habeas corpus. (*People v. Segura* (2008) 44 Cal.4th 921, 928, fn. 4.) Defendant argued that we should do so but, in the interest of caution, filed a separate petition for writ of habeas corpus, which has been consolidated with the present appeal. On April 19, 2016, this court issued an order to show cause why defendant's petition should not be granted. With the fully briefed petition now pending before us, we shall dismiss the appeal based on the absence of a certificate of probable cause and grant the petition for writ of habeas corpus.

## Factual and Procedural history

Defendant was charged with one felony count of possession of heroin (Health & Saf. Code, § 11350, subd. (a)).[2] In advance of the preliminary hearing, defendant moved to suppress all evidence, including observations and statements made, and all items seized, following his improper and warrantless detention and search on May 28, 2013. At the hearing on defendant's motion, Officer Kris Dee of the Antioch Police Department

---

[1] The Attorney General's brief stated: "We note that appellant did not preserve the issue of whether there was a Fourth Amendment violation because he did not renew the motion to suppress with the trial court after the magistrate denied the motion at the preliminary hearing. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896-897.) However, because appellant has raised the claim of ineffective assistance of counsel, appellate review of the legality of the search is necessary. (*People v. Hart* (1999) 74 Cal.App.4th 479, 486-487.)"

[2] All statutory references are to the Health and Safety Code unless otherwise noted.

testified that on May 28, 2013, at around 11:24 p.m., in a high crime area of Antioch, he was driving a fully marked police patrol car with his partner Officer Colley. Dee noticed a black Infiniti occupied by two people parked in front of an apartment complex. It was dark, the area was isolated, and the Infiniti appeared "out of place." Dee stopped his vehicle 20 to 25 feet behind the Infiniti and focused the police car's spotlight on the Infiniti. The spotlight faced the back of the Infiniti and remained on during the entire contact.

Dee approached the vehicle and spoke with the female driver. Officer Colley stood on the passenger's side. Using a "normal tone" of voice, Dee asked the driver if there was a problem with the car. The driver said that the car had broken down and was not drivable. The driver told Dee that the car belonged to defendant, who was sitting in the passenger seat. Defendant confirmed that the car belonged to him.

Dee then asked the driver and defendant for their identification. After confirming that both defendant and the driver were clear for warrants, Dee asked the driver if she had anything illegal on her person. When the driver said she did not, Dee asked if he could confirm that by searching her. She agreed to be searched and stepped out of the car. Dee found nothing illegal on the driver's person. Then Dee asked the driver, "Do you mind sitting on the curb for me?" Dee then went around to the passenger's door and asked defendant if he had anything illegal on his person. Defendant said he did not and Dee asked defendant "if he'd be willing to let [Dee] search him." Defendant agreed and got out of the car. Dee did not find anything illegal in his search of defendant. Following the search, Dee asked defendant also to sit on the curb, which he did. Colley stood behind defendant and the driver as they sat on the curb.

Dee asked defendant if there was anything illegal in his car, and defendant said there was not. Dee asked if he could confirm that by conducting a search of his car, and defendant said "yes." In the course of the search, Dee recovered from inside the console armrest area what the parties later stipulated was 0.183 grams of heroin. Defendant confirmed that the heroin was his. Defendant was cited and released at the scene.

3

The trial court denied defendant's motion to suppress, explaining, "First of all, sitting over on the curb, once you're going to search the car, you can tell everyone to go sit on the curb. You can tell them wherever you want them to sit as long as you don't put them in danger. [¶] You know, it's an interesting case. Really, your argument being made is the one that gets made in all the cases where it's upheld about asking people about do you have anything illegal, and officers have uniforms, and, you know, that that would always then arguably be an officer's always making somebody do something. [¶] I didn't put that very well, but everything here, you know, when you add it all up, the totality, I don't see as causing a problem, and everything that the officer did, there is case law that says he can do it, so the 1538.5 is denied."

Defendant was held to answer on the felony possession charge and an information was filed. Thereafter, the information was amended to add a misdemeanor count of possession of heroin (§ 11350, subd. (b)). Defendant pled no contest to the misdemeanor count in exchange for suspended imposition of sentence and placement on court probation for two years with 90 days in county jail and credit for time served. Defendant was sentenced in conformity with his plea.

**Discussion**

In order to establish a claim of ineffective assistance of counsel, defendant must demonstrate "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome." (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694.) Here, the record establishes that trial counsel believed, incorrectly, that the legality of the search had properly been preserved for appellate review. Defendant's trial counsel submitted a declaration stating, "My failure to file a renewed motion was not based on any strategic or tactical considerations. I was unaware of the rule of *People v. Lilienthal* (1978) 22 Cal.3d 891; that rule requires a

defendant whose motion to suppress was denied at the preliminary hearing, to file a renewed suppression motion in the Superior Court after the filing of the Information, to preserve a search and seizure issue for appeal." Defendant's notice of appeal, filed almost immediately after entry of defendant's plea confirms defendant's intent to challenge the denial of the motion to suppress under section 1538.5. Counsel's failure to preserve this issue by reasserting the motion prior to entry of the plea has not been, and undoubtedly cannot be, justified by strategic considerations and is objectively deficient. As this court held in our prior opinion and as we repeat below, the search was conducted in violation of the Fourth Amendment, and thus the failure to preserve the issue was prejudicial.

Defendant contends the court erred in denying his motion to suppress because his consent to search his car was the product of an unlawful detention. The Attorney General argues that defendant was not detained -- that the encounter between defendant and the police was entirely consensual and that defendant's consent was voluntarily given.

"The People bear the burden of justifying a warrantless search or seizure. [Citation.] In particular, '[w]here, as here, the prosecution relies on consent to justify a warrantless search or seizure, it bears the "burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citation.]" [Citation.] Consent that is the product of an illegal detention is not voluntary and is ineffective to justify a search or seizure.' " (*In re J.G.* (2014) 228 Cal.App.4th 402, 408.)

" ' "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are . . . 'consensual encounters' . . . , which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' . . . Second, there are what are commonly termed 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about

5

to commit a crime.' . . . Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." ' " [Citation.] [¶] As the United States Supreme Court explained in *Florida v. Royer* (1983) 460 U.S. 491: '[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Citations.] Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [Citation.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citations.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. [Citation.] If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.' [Citation.] Under case law established by the high court, ' " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " ' " (*People v. Hughes* (2002) 27 Cal.4th 287, 327-328.)

"The standards we use to review whether there was a detention are clear. 'Whether a seizure occurred within the meaning of the Fourth Amendment is a mixed question of law and fact' subject to de novo review. [Citation.] ' "[W]e review the [lower] court's findings of historical fact under the deferential substantial evidence standard, but decide the ultimate constitutional question independently." ' " (*In re J.G.*, *supra*, 228 Cal.App.4th at pp. 408-409.)

Here, the initial encounter between defendant and the officers undoubtedly was consensual. Having seen a car that appeared out of place in a high crime area, the officers reasonably stopped to investigate. (*People v. Sandoval* (1985) 164 Cal.App.3d 958, 962.) The officer parked his vehicle so as to leave room for the car to drive away. He approached the vehicle at a "normal walking pace" and asked the driver in a "normal tone" if there was a problem with her car. The officer did not expressly or implicitly accuse the driver or defendant of any illegal activity when he first addressed them. While the use of the spotlight to illuminate the car was not by itself a sufficient show of force to establish a detention, it is a factor that must be taken into consideration in evaluating the totality of the circumstances. (*People v. Perez* (1989) 211 Cal.App.3d 1492, 1496 [Use of spotlights, but not emergency lights, without additional conduct manifesting police authority did not amount to a detention.].) As noted in *Perez* "the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny." (*Ibid*.) However, in *People v. Brown* (2015) 61 Cal.4th 968, 980, our Supreme Court again made clear that there is no "bright-line rule" that use of emergency lights necessarily gives rise to a detention. "As an example," the court stated, "a motorist whose car had broken down on the highway might reasonably perceive an officer's use of emergency lights as signaling that the officer had stopped to render aid or to warn oncoming traffic of a hazard, rather than to investigate a crime." (*Ibid.*) That was precisely the situation here, so that it cannot be said that defendant was detained when the officers first approached his car.

As the questioning progressed, however, the undisputed facts show that the officers engaged in a show of authority that would cause a reasonable person to believe that he or she was not free to leave. Even assuming, as the Attorney General argues, that neither the officer's request for defendant's identification nor his asking defendant whether he had anything illegal on his person, nor even his search of defendant's person, was sufficient to render the consensual encounter a detention, the encounter did not terminate at that point. Both defendant and the driver were "requested" to sit on the curb and a second uniformed officer was stationed behind them, giving the unmistakable

7

impression that the officer was there to ensure they did not flee. The driver certainly, and the defendant possibly, had already been requested to sit on the curb with the officer standing behind when defendant was asked for consent to search his vehicle.[3] As the Supreme Court reiterated in *Brown,* " '[W]hen an individual's submission to a show of governmental authority takes the form of passive acquiescence,' we simply consider whether, objectively, ' "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," ' or ' "otherwise terminate the encounter." ' " (*People v. Brown, supra*, 61 Cal.4th at p. 977.) No reasonable person would have felt free to depart when defendant was asked for his consent to search his car.

*In re J.G.*, *supra*, 228 Cal.App.4th at page 412 is instructive. In that case, the officer, in full uniform, approached the minor and his brother while they were walking in a parking lot. The officer initially made casual conversation with the boys, asking them where they were going. The officer asked both boys for identification and ran records checks on each of them. The officer then asked each boy if they had anything "illegal on his person" followed by a request to search when they said no. Finally, the officer searched both boys and found nothing illegal. After searching the boys, the officer then asked the brothers "if they would be willing to have a seat on the curb." They said yes and sat on the curb. Thereafter, the officer obtained the minor's consent to search a backpack the officer had seen the minor put down. The officer recovered a gun inside the backpack and arrested the minor.[4] (*Id.* at pp. 405-406.) Based on the totality of these

---

[3] The record does not make clear whether defendant had been "requested" to sit on the curb before or after he consented to the search of the vehicle. The officer's testimony was that "after I searched them, I asked them if they would sit down on the curb for my safety and they said they would." Again, "after [the officer was] done searching him, [he] also asked him to sit on the curb." The testimony is clear, however, that when defendant told the officer he could search the car, the driver had already been placed on the curb, with an officer behind her.

[4] Less than a minute after the officer initiated conversation with the boys a second officer arrived in a second patrol car and that officer stood "about five to seven feet away" monitoring the situation. At some point during the search of the brothers, two additional

circumstances the court concluded that the officer's request that the minor sit on the curb resulted in a detention. (*Id.* at p. 413.)

In that case, as in the present case, the Attorney General argued that asking, as opposed to directing, a person to sit on the curb does not constitute a detention. The Attorney General relied on *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1370, in which the court observed that "a mere request, as opposed to a command directing the person's movements, does not constitute a Fourth Amendment restraint." In rejecting this argument, the court in *In re J.G.* explained, "We accept that an officer's asking a person to sit on the curb, without more, does not generally constitute a detention. But *Cartwright* does not support the broad proposition that phrasing a statement as a request rather than a command necessarily prevents a detention from occurring. As *Cartwright* recognizes, if 'the content or form of the question impart[s] any compulsion to comply,' there may be a 'basis for finding [the suspect] was under the kind of restraint associated with a Fourth Amendment detention.' " (*In re J.G., supra,* 72 Cal.App.4th at p. 412; see also *People v. Linn* (A145052) 241 Cal.App.4th 46, 64, fn. 7 [Finding substantial evidence to support trial court's factual finding that the officer gave defendant a "command" but noting that "[e]ven if the trial court had found that [the officer] merely 'asked' her to put out her cigarette and put down her soda can, it has been found under similar circumstances that an officer doing so does not negate the coercive nature of the request."].)

The court in *In re J.G.* continued, "Here, the totality of the circumstances would have conveyed to a reasonable person—juvenile or adult—that he or she was not free to refuse the request. [Citation.] Most significantly, the request was made after Officer Woelkers had clearly conveyed to the brothers that he suspected them of unlawful activity. '[Q]uestions of a sufficiently accusatory nature may by themselves because to view an encounter as a nonconsensual detention[,] . . . and the degree of suspicion expressed by the police is an important factor in determining whether a consensual

officers arrived in a third patrol car and returned a shot gun to the second officer. Apparently none of these three officers had any interaction with the brothers prior to the minor's arrest.

9

encounter has ripened into a detention.' [Citations.] Officer Woelkers asked both J.G. and [his brother] whether they had anything 'illegal,' conducted a records check, and searched them, including their pockets, while physically restraining them."[5] (*In re J.G.*, *supra*, 228 Cal.App.4th at p. 412.)

The same is true in the present case. What started as a consensual encounter was elevated to a detention when one officer removed the defendant and the driver from their vehicle, searched them both, and then had them sit on the curb under the watch of a second unformed police officer while he conducted a search of defendant's car. Defendant's consent to that search was given while he was being detained without any basis to suspect that he had engaged in unlawful activity or that his car contained contraband. Under the circumstances, the search of the car violated defendant's rights under the Fourth Amendment, and the motion to suppress the fruits of that search should have been granted.

### Disposition

Defendant's appeal from the judgment is dismissed. The petition for writ of habeas corpus is granted. The judgment of the Contra Costa County Superior Court in case No. 5-140063-9 is vacated and the case is remanded to the superior court with directions to grant the motion to suppress.

---

[5] The physical restraint referenced by the court appears to be the officer's testimony that a search "normally consisted of his asking a subject 'to place [the subject's] hands behind [the subject's] back' and then 'hold[ing the subject's] hands with [his] left hand' while patting the subject's clothes and feeling inside the subject's pockets." (*In re J.G.*, *supra*, 228 Cal.App.4th at p. 406.) In this case, Officer Dee did not detail what his search entailed, only that defendant "got out of the car on his own accord and put his hands behind his head" in preparation for the search.

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Siggins, J.


A143375, A147900

11